UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER P. DOYLE, | ) Case No.: CV 13-5981-PJW |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI").  He claims that the Administrative Law Judge ("ALJ") erred when she evaluated the medical evidence and when she determined that he was not credible.  For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

II.  SUMMARY OF PROCEEDINGS

In July 2006, Plaintiff was injured at work when his hand was crushed by a steel plate.  He later experienced

1

psychological maladies, including Post Traumatic Stress Syndrome ("PTSD"), stemming from the incident. In August 2008, he applied for SSI and Disability Insurance Benefits ("DIB"), based on the injury to his hand, PTSD, anxiety, depression, and degenerative disc disease. His applications were denied initially and on reconsideration. He then requested and was granted a hearing before an ALJ, where he appeared without counsel. On May 4, 2010, the ALJ issued a decision, finding that he was not disabled and denying benefits. (Administrative Record ("AR") 84-96.)

Plaintiff did not appeal that decision. Instead, more than three months later, on August 5, 2010, he applied for SSI anew, alleging that he was disabled as of August 2010, due to the 2006 crush injury to his left hand, lower back pain, and sleep apnea.[1] (AR 86, 151-58, 187.) The Agency again denied his application initially and on reconsideration. Plaintiff then requested and was granted a hearing before an ALJ. On December 14, 2011, he appeared with counsel and testified at the hearing. (AR 52-80.) The ALJ subsequently issued a decision denying benefits. (AR 23-36.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3, 19.) He then commenced this action.

### III. ANALYSIS

A. <u>The ALJ's Evaluation of the Medical Evidence</u>

The ALJ concluded that Plaintiff had the residual functional capacity to perform light work with some restrictions. (AR 27.) Plaintiff contends that she erred in

---

[1] Plaintiff was not able to apply for DIB at this time because he filed his application after his date last insured.

2

doing so. He raises numerous arguments in support of this contention (Joint Stip. at 3-16, 33-35), which the Court addresses below.

Plaintiff complains that the ALJ overlooked his carpal tunnel syndrome and failed to include any limitations based on that condition. (Joint Stip. at 4-6.) He contends that carpal tunnel could "possibly" diminish his grip strength and "*could* significantly reduce the functioning of both hands/wrists. (Joint Stip. at 5 (emphasis added).)

The Court does not find this argument to be persuasive. In the first place, Plaintiff had the burden of establishing that he was disabled at the administrative hearing. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). The fact that even at this stage of the litigation he is left to argue that his carpal tunnel syndrome may possibly have had some impact on his ability to work is a tacit admission that he failed to do so. Absent persuasive evidence at the time of the hearing that his carpal tunnel syndrome impacted his ability to work, the Court rejects Plaintiff's argument that the ALJ erred in failing to find that it was a severe impairment. *See, e.g., Burch v. Barnhart,* 400 F.3d 676, 683-84 (9th Cir. 2005) (holding ALJ did not err in concluding that claimant's obesity was not a severe impairment and/or including obesity in hypothetical to vocational expert because there was no evidence that obesity caused any functional limitations). Further, even assuming that the ALJ should have included carpal tunnel syndrome in the list of severe impairments, the fact that this condition had no impact on his ability to work renders any such error harmless.

Plaintiff disagrees.  He points to Dr. Heskiaoff's 2009 finding that he was precluded from pinching, torqueing, and repeatedly grasping with his left hand.  (Joint Stip. at 5.) That finding was considered by the previous ALJ in May 2010, who also found that Plaintiff's carpal tunnel syndrome was not a severe impairment and that it did not limit his ability to work. (AR 84-96.)  Plaintiff's arguments here seem to be an attempt to relitigate that finding with the same evidence that has already been discounted by the Agency.[2]  Dr. Heskiaoff's 2009 report did not establish in May 2010 that Plaintiff's carpal tunnel syndrome impacted his ability to work and it was even less persuasive in 2012.  For these reasons, this argument is rejected.[3]

Plaintiff complains that the ALJ failed to tie the opinions of any of the doctors to the residual functional capacity findings.  (Joint Stip. at 6-8.)  He points out that the ALJ

---

[2] In a written brief Plaintiff's counsel submitted to the ALJ before the administrative hearing, he moved to reopen the earlier case.  (AR 234.)  It does not appear that the ALJ ever addressed the motion.  The Court assumes that the ALJ's failure to discuss reopening the earlier decision at the administrative hearing or in her decision is a silent denial of the motion.

[3] The principle of res judicata applies to social security cases.  *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). What this means in this case is that Plaintiff may not relitigate the Agency's May 2010 decision that he was not disabled at any time between August 2008 and May 2010.  Though he may pursue his claim that he became disabled after May 2010 and may even use pre-May 2010 medical opinions/records to do so, they are obviously less persuasive than they might otherwise be because they are dated and because the Agency has already considered them and concluded that they do not show that Plaintiff was impaired.  Obviously, this evidence does not get stronger with the passage of time.

4

decided to give little weight to many of the doctors' opinions and did not say which opinion applied to which functional limitation.  There is no merit to this argument.

The administrative record in this case is 999 pages long. It contains medical records and reports from dozens of doctors as well as testimony and submissions from Plaintiff.  The ALJ summarized the medical records and other evidence in her decision.  (AR 27-35.)  In doing so, she pointed out why she accepted portions of some of the doctors' opinions and why she rejected others.  She also explained why she questioned Plaintiff's testimony.

Plaintiff seems to think that the ALJ was required to cite a doctor's opinion for each limitation she arrived at in the residual functional capacity findings.  Plaintiff is mistaken. The ALJ was not required to identify which doctor's findings supported which limitation.  Her detailed description of the medical records and her analysis of the weight accorded to each doctor was sufficient. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (explaining ALJ meets his burden of properly analyzing medical opinions by "setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings").  Further, as the Agency points out, determining the residual functional capacity was the ALJ's job, not the doctors'.  *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

Plaintiff argues that his mental condition meets Listings 12.04 and 12.06. (Joint Stip. at 14-16.) Much of this argument is contingent on his testimony at the administrative hearing and his statements to his doctors that are contained in the medical record. But the ALJ determined that Plaintiff was not credible. Thus, Plaintiff's argument that he meets the Listings because he described limitations that were consistent with the Listing requirements is rejected. However, because, as explained below, the Court is remanding the issue of credibility, the ALJ may have to revisit this issue on remand.

Treating psychologist Conolley and psychiatrist Vicary opined that Plaintiff's mental impairments were extremely debilitating, precluding work. (AR 260-71, 280-92, 988-94.) The ALJ rejected these opinions in part because they were offered in the context of the worker's compensation case and were, thus, couched in worker's compensation terms. (AR 34.) This is not a good reason for rejecting the doctors' opinions in toto. Though there are some terms and principles used by these doctors in their reports that are unique to worker's compensation cases, the fact that the doctors couched parts of their reports in worker's compensation terms does not render their opinions irrelevant. Most of what they said in their reports is phrased in general medical terminology and is readily understandable and transferable to this case. As such, the ALJ should take another look at these opinions on remand and, even if she determines that parts of the doctors' reports are not relevant to the case, she should still take the reports into account in evaluating Plaintiff's alleged disability. *See*,

*e.g.*, *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007) (explaining, even if treating doctor's opinion is not entitled to controlling weight, it must still be considered by ALJ).

The ALJ also rejected Dr. Vicary's opinion because Plaintiff was rarely seen by Dr. Vicary and because the opinion was not supported by Dr. Vicary's clinical notes. (AR 34.) As Plaintiff has pointed out, however, the ALJ overlooked Dr. Vicary's chart notes in the record. (AR 961-62, 964-72.) This was a mistake and requires another look on remand.[4]

The ALJ may have also missed numerous forms Dr. Vicary filled out that are also included in the record. (AR 357, 358, 362, 412, 425, 426, 434, 438, 468, 469, 470, 472, 473, 478, 485, 489, 513.) Like the chart notes, however, these reports are not very helpful in understanding how Dr. Vicary came to his opinion. They are form reports that Dr. Vicary was apparently required to fill out every 45 days for Plaintiff's worker's compensation case. They do not contain much detail and consist of a series of boxes to check along with brief statements about the doctor's conclusions. Despite these shortcomings, on remand, the ALJ should take a look at them and determine whether they impact her analysis.

B. <u>The Credibility Determination</u>

The sum and substance of Plaintiff's testimony was that his physical and psychological ailments prevented him from working.

---

[4] The Court has reviewed the notes and finds that they do not seem to add much to the analysis. They are cryptic at best and do not provide many clues as to why Dr. Vicary concluded that Plaintiff was so severely restricted. Nevertheless, on remand, the ALJ should consider them.

1  (AR 57-72.)  The ALJ found this testimony incredible because:
2  (1) Plaintiff's claims could not be "objectively verified with
3  any degree of certainty"; (2) his claims were not supported by
4  the "relatively weak medical evidence"; (3) he was raising a
5  young daughter on his own; and (4) other, unspecified reasons.
6  (AR 28.)  Plaintiff argues that these reasons are not enough to
7  support the ALJ's finding.  For the following reasons, the Court
8  agrees.
9       As to the ALJ's first reason--the lack of supportive,
10 objective evidence--the Court finds that it is not a valid
11 reason for questioning Plaintiff's testimony.  Claimants are not
12 required to corroborate their testimony with objectively
13 verifiable proof.  Though claimants sometimes submit
14 testimonials from family members and friends who have observed
15 them and can report on what they have seen, there is no
16 requirement that they do so.  That does not necessarily mean
17 that an ALJ is required to simply accept a claimant's testimony
18 at face value, but the law has developed numerous things that an
19 ALJ can consider when measuring the veracity of a claimant's
20 testimony.  Objective verifiability is not one of them and for
21 that reason it is rejected.
22      The ALJ also focused on the fact that the medical evidence
23 submitted by Plaintiff was "weak."  (AR 28.)  This explanation
24 is not specific enough to withstand scrutiny.  The medical
25 record in this case is mixed.  Some of it supports Plaintiff's
26 claims, some of it doesn't, and still other evidence is
27 ambiguous.  The ALJ was required to identify the medical
28 evidence that she found undermined Plaintiff's testimony so that

Plaintiff and the Court could understand what she was relying on in reaching her conclusion. *See, e.g., Treichler v. Comm'r of Soc. Security*, ___ F.3d ___, 2014 WL 7332774, at *9 (9th Cir. 2014) (explaining ALJ required to identify testimony that is not credible and specify what undermines it). By painting the credibility analysis with such a broad brush, the ALJ left it to the Court and counsel to decipher what she was referring to. This, she was not allowed to do. On remand, she should be more specific.

The ALJ also looked at Plaintiff's daily activities, primarily his conduct in raising his young daughter on his own. This is a legitimate reason for questioning a claimant's testimony, *see Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (explaining ALJ may consider claimant's ability to perform daily activities in assessing credibility), and is supported by the record. Plaintiff is a single dad who, when he appeared before the ALJ in 2012, had been raising his then-six-year-old daughter on his own since she was a baby. Though he tries to downplay the amount of physical and mental effort this entails, his arguments along those lines are rejected. The ALJ fairly assumed that raising a young child required a considerable amount of effort on Plaintiff's part. It included getting her up in the morning, feeding her, helping her get dressed, fixing her lunch, taking her to school, picking her up after school, taking her home, feeding her, washing her, and putting her to

bed. And, on weekends, the load was increased several-fold because his daughter was not in school.[5]

The final reason cited by the ALJ for discounting Plaintiff's testimony was "other," which she apparently intended to address in her decision. (AR 28.) She failed, however, to identify what this "other" was. The Court can only guess as to what she meant, which the Court is not allowed to do in the context of this appeal. *See Bray v. Astrue,* 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ--not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Thus, in the end, the Court finds that several of the reasons proffered by the ALJ for discounting Plaintiff's testimony are not valid and one reason is. The Court concludes that the one valid reason is not enough to uphold the ALJ's credibility finding. The issue that remains is whether the Court should credit Plaintiff's testimony as true and reverse the ALJ's decision or remand the case to the Agency for further consideration of the credibility issue. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court concludes that remand is warranted here because it is not clear from the record whether Plaintiff's testimony should be credited and, even if it

---

[5] Plaintiff points out that he was receiving help from a local center where his daughter went after school each day until 5:00 p.m. (AR 68.) Presumably, that eased some of the load during the week but it did not help him on the weekends. (AR 995.)

were, whether he would be entitled to SSI benefits. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding "credit as true" doctrine not mandatory and remanding case to Agency for reconsideration of credibility issue). Dr. Noble, Plaintiff's prior treating doctor, believed that Plaintiff was exaggerating and/or malingering and was not as limited as he claimed. (AR 90-92.) Other doctors disagreed. The first ALJ concluded that Plaintiff was not credible, a finding Plaintiff did not appeal. And Plaintiff's ability to raise his daughter on his own seems to undermine his testimony that he has trouble sitting for prolonged periods, standing, walking, and getting off the toilet. (AR 66.) All this being said, the Court finds that further development of the issues is necessary before it can be fairly determined whether Plaintiff's application for benefits should be granted.

## IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: 2/5/15

*Patrick J. Walsh*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\DOYLE, 5981\Memo Opinion and Order s.docx